In the
United States Court of Appeals
For the Ninth Circuit

**David Gary Gladden**     )
   Appellant,     )
                           )
   Versus     )
                           )
**U.S. Department of Transportation; Federal**     )
**Aviation Administration; Frederick E. Tilton,**     )
**Federal Air Surgeon, John Does 1-10**     )   Case: **13-70433**
   Appellees.     )

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

APR 2 9 2013

FILED
DOCKETED   DATE   INITIAL

**Emergency Motion to Vacate the Withdrawal ORDER by Tilton.**

Comes now David Gary Gladden ("Gladden") without assistance of Counsel, with this Expedited Motion to Vacate the Withdrawal ORDER by Tilton. Gladden Notified Amanda K. Bruchs of his intent to file in a Motion to Vacate the Withdrawal ORDER by Tilton in the Week of April 1st, 2013, wherein she had no opinion; and, Gladden stated he would oppose the Motion to Dismiss.

At Issue in this Emergency Motion is **Tilton's Withdrawal Letter of March 13, 2013 of Gladden's Special Issuance Medical Certificate** [R 2-3] and claiming that the Ninth Court is without jurisdiction now so the Court should Dismiss this Case, wherein **Gladden is Motioning this Court to Vacate this Withdrawal Letter and adjudicate the issues before it within the constraints of** regulations 14 CFR §§§ 67.107(a)(1), 67.207(a)(1) and 67.307(a)(1) and 5 U.SC. 706, *infra.* If this Court proceeds with the dismissal Gladden will be right

back with the same issue many months later or next year. See *infra. American Rivers v. National Marine Fisheries Service*, 126 F.3d 1118, 1123-1124 (9th Cir. 1997).

Gladden has been without a Medical Certificate from the FAA **for over 15 months** and currently the Dillingham companies are searching for qualified pilots for specific types of airplanes used for the summer season in Dillingham that Gladden is qualified to fly, which accommodate the seasonal tourism and fishing demand; and, then for the fall season of hunting. If Gladden is not granted the Medical Certificate for this summer and fall season, then his main means of surviving and making a living will have been **denied for over two years. This is not due process of law that it takes this amount of time denying Gladden to ply his trade to support himself and this is all due to the continuing dilatory actions by the FAA.**

Gladden has an impeccable record of flying in some of the most dangerous areas in Alaska as both a bush pilot and commercial pilot **with over 15,000 hours over the last 35 years with no accidents or incidents. Not many pilots are in this category in Alaska. There has not been ONE factual issue forthcoming from the FAA that Gladden is any sort of hazard or danger to the public as a pilot; and, not one factual issue for "withdrawal" of the "Special Issuance Medical Certificate" other than Gladden hasn't complied with impossible**

conditions which are *ultra virus of the regulations of* 14 CFR §§ 67.107(a)(1), 67.207(a)(1) and 67.307(a)(1).

After Gladden filed into the Ninth Circuit, Tilton then has **withdrawn the "Special Issuance Medical Certificate" as evidenced by FAA Record pages 2-3.**

Gladden proceeded in good faith to get Tilton to with specificity in a letter dated December 7, 2012 [R15] to identify "**a personality disorder that is severe enough to have repeatedly manifested itself by <u>overt acts</u>**" that Gladden was mandated to discuss with a "**psychologist**" in the Letter dated December 4, 2012 "**psychologist**" [R16] to correct Gladden's "**behavioral stability**." [R16].

Tilton's response to identify and clarify these "overt acts" of "personality disorder" was delineated in a letter dated January 9, 2013 [R7] with the following excerpt, to wit:

> I am responding to your letter of December 7, 2012 requesting clarification of your Authorization for Special Issuance of a medical certificate ("'Authorization"). Under the medical standards in Title 14, Code of Federal Regulations (14 CPR) Part 67, a personality disorder is disqualifying if severe enough to have **repeatedly manifested itself by overt acts**. Your history includes multiple acts involving [1]**arrests (including forcible entry), [2] charge of theft, [3]failure to file sales tax returns, [4] resisting arrest, [5] driving with a suspended or revoked driver's license, unlawful use of an operating license, [6] failure to pay court ordered child support, and [7] traffic violations**. The totality of these repeated conflicts with various civil requirements, rather than each individual event, suggest a pattern of behavioral instability that appears to repeatedly manifest in disregarding generally accepted rules for behavior.

> My only concern is that you are able to fly safely by following FAA rules and regulations for aviation on safety. Your history suggests a risk that you might also disregard aviation safety rules. However, your flying history to date shows no evidence of mishap. Therefore, I have been willing to grant an Authorization for special issuance of a medical certificate contingent on you engaging in counseling to monitor your behavioral stability and compliance with the safe performance of pilot duties under all applicable FAA rules and regulations.

Tilton has demanded from Gladden to meet with a **"psychologist"** [R16] correct Gladden's **"behavioral stability."** [R16] on the issues of a, *ibid.*, **""personality disorder"** is disqualifying if severe enough to have **repeatedly manifested itself by overt acts**. Your history includes multiple acts involving **[1]arrests (including forcible entry), [2] charge of theft, [3]failure to file sales tax returns, [4] resisting arrest, [5] driving with a suspended or revoked driver's license, unlawful use of an operating license, [6] failure to pay court ordered child support, and [7] traffic violations**. None of this is clothed within the regulations of 14 CFR §§ 67.107(a)(1), 67.207(a)(1) and 67.307(a)(1).

**FACT ONE,** *supra,*—**"arrest for forcible entry"**—totally false, never arrested for "forcible entry"—ever! Evidence please?

**FACT TWO,** *supra,*—**"charge of theft"**—3DI-11-71CR filed on March 7, 2011—Totally bogus felony charges as the prosecutor Susan Mitchell conspired with Judge Torrisi on a Landlord/Tenant issue, wherein the alleged crime didn't happen as the "victim" was paid in full, requiring the Prosecutor to dismiss the

charges on June 14, 2011, being another harassment of Gladden.

**FACT THREE,** *supra,*—"**failure to file sales tax returns**"—Admitted there is no Ordinance 77-10 when this was repealed as the new ORDINANCE 77-10 according to the **"adopted Exhibit A" is non-existent verified by affidavits of the two clerks of Dillingham making it impossible to** codify a sales tax from a non-existent "adopted Exhibit A", therein precluding any sales tax authority. See A-11051, S-14951 and now a "Writ of Certiorari" delivered into the Supreme Court of the United States April 15, 2013. Should Gladden recall this Certiorari as this is an **"overt act" or "personality disorder" mandated by the** Simmons, Tilton, Chesanow, DeVoll, Cole, and Stafford ("**FAA Parties**")?

**FACT FOUR,** *supra,*—"**resisting arrest**"—3AN-99-3354CR [1999] and 3DI-09-449CR [2009]—Two Bogus charges as both were dismissed under a Rule 43(a) as no evidence by the Prosecutor.

**FACT FIVE,** *supra,*—"**driving with a suspended or revoked driver's license, unlawful use of an operating license**"—3DI-03-57CR convicted in 2005 due to the child custody agency causing the DMV to revoke Gladden's drivers license and not due to any "violations" of traffic Laws. Punitive action by CSSD.

**FACT SIX,** *supra,*—"**failure to pay court ordered child support**"—This is a current ongoing issue wherein the Child Support Services Division ("CSSD") has a "cooperative agreement" [contract] between the Alaska Court System

(judicial branch) and CSSD (executive branch), which is a violation of "separation of powers" and a direct "conflict of interest;" and, then judge, which is not an independent judge as he is audited for his performance under the cooperative agreement [contract] create federal grant money for the Alaska Court System and CSSD, to wit:

> **Article VI. Other Terms and Conditions B. Financial penalties or disallowances of federal financial participation for incurred expenditures that are sustained by CSSD as a direct result of any federal audit or office review finding of inadequate performance by the Court [Judge] under this agreement [Cooperative Agreement] shall be passed on to the Court in the appropriate share upon receipt of official notice of such finding.**

I am sure the **FAA Parties** have a copy of this; but, in case they don't, they can obtain a copy from CSSD, 550 W. 7th, Suite 310, Anchorage, Alaska 99501 or call 907-264-8215. This is under 45 CFR § 302.34—Cooperative Agreements and 45 CFR § 303.107—Requirements for cooperative arrangements; wherein, this "Cooperative Agreement" and the Rules of Law with its regulations are supported by the FAA Parties as evidenced by their Letters.

**FACT SIX,** *supra,* "**traffic violations**"—four in thirteen years (not using a turn signal, vehicle registration tabs missing, no license tag on front of vehicle and no proof of insurance in vehicle; which, are all non-criminal (fines) and did not involve any operational issues such as speeding, running a red light or other action

that would in the remotest be a safety issue. So why are the FAA Parties citing this? More evidence of the vindictive actions of the FAA Parties.

**FACT SEVEN:** What do any of these "Your history includes multiple acts involving [1]arrests (including forcible entry), [2] charge of theft, [3]failure to file sales tax returns, [4] resisting arrest, [5] driving with a suspended or revoked driver's license, unlawful use of an operating license, [6] failure to pay court ordered child support, and [7] traffic violations" **have to do with flying an airplane safely? More importantly NONE of these scurrilous and false accusations by the FAA Parties are clothed within regulations of 14 CFR §§ 67.107(a)(1), 67.207(a)(1) and 67.307(a)(1).**

Regulations 14 CFR §§ 67.107(a)(1), 67.207(a)(1) and 67.307(a)(1) are limited strictly to (1) personality disorder that is severe enough to have repeatedly manifested itself by overt acts", wherein none of the other components are at issue. **"Personality disorder"** is not defined and most certainly does not include the **scurrilous and false accusations by the FAA Parties,** *supra.*

The FAA Parties are proceeding *ultra virus* and in violation of 5 U.S.C. § 706. Scope of Review, to wit (see bolded):

> To the extent necessary to decision and when presented, the reviewing court **shall decide all relevant questions of law**, interpret constitutional and statutory provisions, and determine the **meaning or applicability of the terms of an agency action. The reviewing court shall--**
> **(1) compel agency action unlawfully withheld or unreasonably**

delayed; and
(2) **hold unlawful and set aside agency action, findings, and conclusions found to be--**
(A) **arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;**
(B) contrary to constitutional right, power, privilege, or immunity;
(C) **in excess of statutory jurisdiction**, authority, or limitations, or short of statutory right;
(D) **without observance of procedure required by law;**
(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or
(F) **unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.**
In making the foregoing determinations, **the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.**

In *Fort Stewart Schools v. Federal Labor Relations Authority, et al.*, 495 U.S. 641, 654 (1990) "It is a familiar rule of administrative law that an agency must abide by its own regulations. *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 976, 3 L.Ed.2d 1012 (1959); *Service v. Dulles,* 354 U.S. 363, 388, 77 S.Ct. 1152, 1165, 1 L.Ed.2d 1403 (1957)."

In *Vitarelli v. Seaton*, 359 U.S. 535, 546-547 (1959), to wit:

**An executive agency must be rigorously held to the standards by which it professes its action to be judged.** See *Securities & Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 87-88, 63 S.Ct. 454, 459, 87 L.Ed. 626. Accordingly, if dismissal from *547 employment is based on a defined procedure, even though generous beyond **the requirements that bind such agency, that procedure must be scrupulously observed.** See *Service v. Dulles,* 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403. **This judicially evolved rule of administrative law is now firmly established and, if I may add,**

**rightly so. He that takes the procedural sword shall perish with that sword.**

See *Service v. Dulles*, 354 U.S. 363, 388 (1957).

In *United States v. Caceres*, 40 U.S. 741, 754 (1979), to wit:

Agency violations of their own regulations, whether or not also in violation of the Constitution, may well be inconsistent with the standards of agency action which the APA directs the courts to enforce. Indeed, **some of our most important decisions holding agencies bound by their regulations have been in cases originally brought under the APA. FN 19.**

FN 19 *Vitarelli v. Seaton, supra,* 359 U.S., at 547, 79 S.Ct., at 976 (Frankfurter, J., concurring in part and dissenting in part) (**"This judicially evolved rule of administrative law is now firmly established and, if I may add, rightly so. He that takes the procedural sword shall perish with that sword"**).

In *Watkins v. U.S. Bureau of Customs and Border Protection*, 643 F.3d 1189, 1198 (9th Cir. 2011) "**It is a familiar rule of administrative that an agency must abide by its own regulations.** *Fort Stewart Schools v. Fed. Labor Relations Auth.,* 495 U.S. 641, 654, 110 S.Ct. 2043, 109 L.Ed.2d 659 (1990)(citing *Vitarelli v. Seaton,* 359 U.S. 535, 547, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959)"

These **FAA Parties** are not the First to **threaten, blackmail, punish, and by hortatory letters demand Gladden to "dismiss with prejudice" his criminal Appeal in A-11051 and his Quiet Title Action in 3DI-11-118CI.** This is conclusively evidenced by **Attachment 1—Letter Dated January 18, 2012 signed by Brooks Chandler of Boyd, Chandler and Falconer LLP**, refusing to

account for the money taken by Alaska Statute 29.45.480(b) and refusing to discuss the statutory rebate of excess money until Gladden "dismissed with prejudice" **A-11051 (criminal Appeal on Sales Tax)** and **3DI-11-118CI Quiet Title Action** with the excerpt, to wit:

> Any settlement resolving the dispute regarding these sale proceeds will need to include your agreement to <u>**dismiss, with prejudice**</u>, **both the current appeal of your sales tax evasion conviction (Case No. A-11051), and Case No. 3DI-11-118 CI.** If you would be willing to do that the City can continue discussions regarding whether you are entitled to receive any of the funds received from the sales. Please understand that you do NOT have to dismiss these lawsuits in order for the city to discuss settlement. You simply need to be aware that <u>**under no circumstances will the City voluntarily agree to provide you with any funds from these sales unless in return you agree to drop the cases.**</u>

This documented attempt of blackmail and threats by Chandler was condoned by all attorneys and two judges as perfectly acceptable behavior and also affirmed by the Alaska Bar; and, now affirmed as acceptable by the **FAA Parties** as they are also punishing, threatening, and blackmailing Gladden for the very same issues that are also affirmed by the FAA Parties that they have full and total knowledge of all of the cases of Gladden's thereof including all of the legal and lawful issues under their various signatures.

The criminal case 3DI-10-535CR (sales tax) that was appealed in A-11051[1] to the Court of Appeals—Alaska (refused to answer with precedent as required and promised on validity of Ordinance 77-10 (repealed with no "adopted by Exhibit A" to use for codification in existence, conclusive, and admitted by Dillingham to not exist – See **Affidavit of Vivian Braswell R272-273** and **Affidavit of Janice Williams R277**) by Judge Suddock on a Cooksey Plea taken), appealed then by Case no. S-14951 to the Supreme Court of Alaska (refused to answer with precedent as required and promised) with now a "Writ of Certiorari" just received into the Supreme Court of the United States this April 15, 2013. Two Civil Cases 3DI-11-118CI (Quiet Title) with the Appellate Brief filed in S-14977—Supreme Court of Alaska with the Appellee Brief due next month; and, 3DI-12-36 CI Civil Suit with the Appeal in S-15073, waiting on the Appellate Schedule.

Amazing how the **FAA Parties** and **Chandler** are so intent to join together to blackmail, punish, threaten, and by hortatory letters deny Gladden his constitutionally secured rights to access courts of Alaska exercising the judicial Power of one of the several States and now to attempt to deny Gladden the right of

---

[1] Unpublished A-11051 in the Court of Appeals—Alaska "Memorandum decisions of this court **do not create legal precedent**. See Alaska Appellate Rule 214(d) and Paragraph 7 of the Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3). Accordingly, this memorandum decision **may not be cited as binding precedent for any proposition of law.**"

the Ninth Circuit to exercise its judicial Power arising under Article III of the Constitution of the United States.

## II. Loss of Jurisdiction.

In *American Rivers v. National Marine Fisheries Service*, 126 F.3d 1118, 1123-1124 (9th Cir. 1997), to wit:

> Issues which are **"capable of repetition, yet evading review"** present an exception to the mootness doctrine. *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911); *Alaska Fish & Wildlife Fed'n v. Dunkle,* 829 F.2d 933, 939 (9th Cir.1987), *cert. denied,* 485 U.S. 988, 108 S.Ct. 1290, 99 L.Ed.2d 501 (1988). "The doctrine is limited to extraordinary cases in which: (1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) **there is a reasonable expectation that the plaintiffs will be subjected to the same action again.**" *Dunkle,* 829 F.2d at 939 (citation omitted); *see also Native Americans for Enola v. U.S. Forest Serv.,* 60 F.3d 645, 646 (9th Cir.1995).

The past actions of the FAA Parties guarantee that Gladden will be back again into the 9th Circuit with the very same issue—"The Federal Air Surgeon must now determine whether to grant or deny Mr. Gladden's application for unrestricted airman medial certificate" (Motion pgs. 10-11), which they have already made that decision. The FAA Parties admit that they will look at their last "determination" of a "Special Issuance Medical Certificate" to change it now; and, based on what new evidence? Gladden had filed into the NTSB for his Appeal on March 22, 2012; and, then Tilton knowing Gladden would win if the NTSB followed the regulations then withdrew his ORDER on April 11, 2012 by instead demanding additional

testing, at additional time and expense to Gladden, eventually granting a "Special Issuance Medical Certificate" only with conditions that are "impossible" to comply with requiring him to meet with a "psychologist" [R16] for some sort "insight oriented therapy" and discussing Gladden's "behavioral stability." [R16]. The "behavioral stability" to be discussed with a "psychologist" are the **scurrilous and false accusations,** *supra*, which was the response to Gladden's good faith action for Tilton to with specificity identify the "overt actions" of this alleged "personality disorder."

## IV. Conclusion.

Therefore, Gladden does hereby Oppose the FAA Parties usurping the judicial Power of the Ninth Circuit for a determination of the ORDER before it; and, Gladden will definitely be back at the Ninth Circuit with the same issue of a denial of the Medical Certificate; and, the FAA isn't going to change its determination after issuing a "Special Issuance Medical Certificate' with no new "evidence"; and, the FAA Parties have already once done this exact same removal from the NTSB Appellate process and now they are attempting the same dilatory action that is not in accord with the Due Process of Law and the holdings of the courts and dilatory actions so that Gladden will not receive determination by the Ninth Circuit. This is all dilatory in nature and Gladden has already been unable to pursue his trade for more than 15 months. This is not Due Process of Law and is

extremely detrimental to Gladden to not be able to ply his Trade, wherein the summer months are the busiest for tourists and fishing.

The Vacating of Tilton's Withdrawal ORDER is within the Powers of the Ninth Circuit; and, further Gladden has demonstrated that the FAA Parties are proceeding *ultra virus*; and further, that Gladden will prevail when this issue is adjudicated by the Ninth Circuit; and, further to deny Gladden his "Medical Certificate" will result in "irreparable harm" wherein who can be denied to ply his trade for over 15 months and still exist?

Therefore this Expedited Motion to Vacate Tilton's Withdrawal of Gladden's Special Issuance Medical Certificate and have same reinstated until this Court makes a determination; and then, a new Appellate Brief Schedule should be proffered, which will result in Gladden being able to work during the summer of 2013 no thanks to the FAA Parties' dilatory actions.

Signature,

*David Davy Gladden*

**Certificate of Service**

I certify that this Expedited Motion was mailed first class via the USPS prepaid to the following parties, to wit:

Amanda K. Bruchs
Office of Chief Counsel
Federal Aviation Administration
800 Independence Avenue, S.W
Washington, D.C. 20591

Date: 04/25/2013

*David Gary Gladden*
/s/ David Gary Gladden

**BOYD, CHANDLER & FALCONER, LLP**
ATTORNEYS AT LAW
SUITE 302
911 WEST EIGHTH AVENUE
ANCHORAGE, ALASKA 99501
TELEPHONE: (907) 272-8401
FACSIMILE: (907) 274-3698
bcf@bcf.us.com

January 18, 2012

Mr. David Gary Gladden
P.O. Box 833
Dillingham, Alaska 99576

                    Re: Proceeds from Foreclosure Sales

Dear Mr. Gladden:

     The City Council has considered and rejected your earlier proposal for the City to retain $229,000 of the proceeds from the sale of City property formerly owned by you, as well as the sale of various items of personal property seized to satisfy outstanding judgment and sales tax liens held by the City and to pay the balance to you. Any settlement resolving the dispute regarding these sale proceeds will need to include your agreement to dismiss, with prejudice, both the current appeal of your sales tax evasion conviction (Case No. A-11051), and Case No. 3DI-11-118 CI. If you would be willing to do that the City can continue discussions regarding whether you are entitled to receive any of the funds received from the sales. Please understand that you do NOT have to dismiss these lawsuits in order for the city to discuss settlement. You simply need to be aware that under no circumstances will the City voluntarily agree to provide you with any funds from these sales unless in return you agree to drop the cases.

     As you know, there is an additional complication in the City agreeing to release any funds from the sale to you. CSED claims a lien on the AS 29.45.480(b) credit you claim is due you. The amount of the CSED lien is $71,501.54 as of last month (see enclosure) and grows by about $215 per month. This lien would need to be satisfied or released by CSED, either by payment from the proceeds now held by the City, or by you reaching an agreement with CSED to relinquish the child support lien in order for any resolution of the amount you should receive under AS 29.45.480(b) to be achieved.

     You may consider this the City's response to your January 5 letter. In addition, it is the City's position that they have previously advised you that there are no excess funds which you are entitled to receive under AS 29.45.480(b), and the reasons why there are no excess funds. The City has provided you copies of all information related to this conclusion, including an accounting of expenses incurred and how the existence and payment of various liens have been made from the sales proceeds. The only additional information which may be available from the City has to do with rents received by the City while it owned the property. You will be provided this information once we receive it from the City.

                                                                                       Attachment 1 - page 1 of 3

Mr. David Gary Gladden
January 18, 2012
Page 2 of 2

---

Your arguments that the federal tax lien was fraudulent have been considered. I do not believe they have any legal merit. It is well recognized in the law that the IRS has the right to assert liens against delinquent taxpayers. If you felt the lien was fraudulent, you should have challenged the lien upon receiving notice of the lien from the IRS.

Sincerely,

BOYD, CHANDLER &
FALCONER, LLP

BY: *[signature]*

Brooks W. Chandler

BWC/lhf
lfbwc.dham.gladden.corres.20120118.BWC to Gladden

DEC-20-2011 11:30 From: 9072696692 To:907 214 3698 P.2/2

| 12/20/11 | ALASKA CHILD SUPPORT SERVICES DIVISION<br>AUTOMATED AUDIT SUMMARY REPORT | | PAGE: 1 |

From: 03/01/98   To: 12/20/11

Case ID       : 001082323        Case Worker: 7215  - Robert B Short        Team: 06
Custodian     : MARY S GLADDEN
Non-Custodian : DAVID G GLADDEN

Other State ID:

Mail to       : DAVID G GLADDEN
                PO BOX 833
                DILLINGHAM , AK 99576

**Balance Owed:   71,501.54**

| Date | Item Description | Charges | Payments & Credits | Balance |
|---|---|---|---|---|
| 11/30/11 | Interest | 215.83 | | 71,501.54 |
| 10/31/11 | Interest | 215.83 | | 71,285.71 |
| 10/06/11 | Payment | | 1,156.00 | 71,069.88 |
| 09/30/11 | Interest | 222.29 | | 72,225.88 |
| 08/31/11 | Interest | 222.29 | | 72,003.59 |
| 07/31/11 | Interest | 222.29 | | 71,781.30 |
| 06/30/11 | Interest | 222.29 | | 71,559.01 |
| 05/31/11 | Interest | 222.29 | | 71,336.72 |
| 04/30/11 | Interest | 222.29 | | 71,114.43 |
| 03/31/11 | Interest | 222.29 | | 70,892.14 |
| 02/28/11 | Interest | 222.29 | | 70,669.85 |
| 01/31/11 | Interest | 222.29 | | 70,447.56 |
| 12/31/10 | Interest | 222.29 | | 70,225.27 |
| 11/30/10 | Interest | 222.29 | | 70,002.98 |
| 10/31/10 | Interest | 222.29 | | 69,780.69 |
| 09/30/10 | Interest | 222.29 | | 69,558.40 |
| 08/31/10 | Interest | 222.29 | | 69,336.11 |
| 07/31/10 | Interest | 222.29 | | 69,113.82 |
| 06/30/10 | Interest | 222.29 | | 68,891.53 |
| 05/31/10 | Interest | 222.29 | | 68,669.24 |
| 04/30/10 | Interest | 222.29 | | 68,446.95 |
| 03/31/10 | Interest | 222.29 | | 68,224.66 |
| 02/28/10 | Interest | 222.29 | | 68,002.37 |
| 01/31/10 | Interest | 222.29 | | 67,780.08 |
| 12/31/09 | Interest | 222.29 | | 67,557.79 |
| 11/30/09 | Interest | 222.29 | | 67,335.50 |
| 10/31/09 | Interest | 222.29 | | 67,113.21 |
| 09/30/09 | Interest | 222.29 | | 66,890.92 |
| 08/31/09 | Interest | 222.29 | | 66,668.63 |
| 07/31/09 | Interest | 222.29 | | 66,446.34 |
| 06/30/09 | Interest | 222.29 | | 66,224.05 |
| 05/31/09 | Interest | 222.29 | | 66,001.76 |
| 04/30/09 | Interest | 222.29 | | 65,779.47 |
| 03/31/09 | Interest | 222.29 | | 65,557.18 |
| 02/28/09 | Interest | 222.29 | | 65,334.89 |
| 01/31/09 | Interest | 222.29 | | 65,112.60 |
| 12/31/08 | Interest | 222.29 | | 64,890.31 |
| 11/30/08 | Interest | 222.29 | | 64,668.02 |
| 10/31/08 | Interest | 222.29 | | 64,445.73 |
| 09/30/08 | Interest | 222.29 | | 64,223.44 |
| 08/31/08 | Interest | 222.29 | | 64,001.15 |
| 07/31/08 | Interest | 222.29 | | 63,778.86 |
| 06/30/08 | Interest | 222.29 | | 63,556.57 |
| 05/31/08 | Interest | 222.29 | | 63,334.28 |
| 04/30/08 | Interest | 222.29 | | 63,111.99 |
| 03/31/08 | Interest | 222.29 | | 62,889.70 |
| 02/29/08 | Interest | 222.29 | | 62,667.41 |
| 01/31/08 | Interest | 222.29 | | 62,445.12 |
| 12/31/07 | Interest | 222.29 | | 62,222.83 |
| 11/30/07 | Interest | 222.29 | | 62,000.54 |
| 10/31/07 | Interest | 222.29 | | 61,778.25 |
| 09/30/07 | Interest | 222.29 | | 61,555.96 |
| 08/31/07 | Interest | 222.29 | | 61,333.67 |
| 07/31/07 | Interest | 222.29 | | 61,111.38 |
| 06/30/07 | Interest | 222.29 | | 60,889.09 |
| 05/31/07 | Interest | 222.29 | | 60,666.80 |

Attachment 1- page 3 of 3